# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEVEN J. ALEXANDER,
KEITH A. BALASH, CHARLES A.
BERARD, MICHAEL R. BRUNOW,
JAMES C. CLEVELAND,
JOSEPH J. FARINA, JOHN MALLOY
HAGEN, WILLIAM E. HEINEN,
WAYNE W. JENSEN, THOMAS P.
KLUSMAN, EDWARD N. LIEBRECHT,
RONALD G. QUACKENBUSH,
ANTHONY T. SMITH, STEVEN J.
SPINGOLA, KIM R. STACK,
DAVID C. VAHL, and MICHAEL D.
YOUNG,

                    Plaintiffs,              Case No. 03-C-611

          v.

CITY OF MILWAUKEE, POLICE CHIEF
ARTHUR JONES, individually and in his
official capacities, MILWAUKEE BOARD
OF FIRE AND POLICE COMMISSIONERS,
CHAIRMAN WOODY WELCH,
VICE-CHAIRMAN CARLA Y. CROSS,
COMMISSIONER ERIC M. JOHNSON,
COMMISSIONER LEONARD J. SOBCZAK,
COMMISSIONER ERNESTO A. BACA,
individually and in their official capacities,

                    Defendants.

## OPINION AND ORDER

          On June 27, 2003, the above-named Plaintiffs filed suit against the City

of Milwaukee and six individually named Defendants.  Subsequently, all seventeen

Plaintiffs prevailed on their claims against all of the Defendants. The jury awarded the Plaintiffs compensatory damages in the amount of $464,500.00 and punitive damages in the amount of $1,734,000.00. The court determined the economic loss for thirteen of the Plaintiffs to be $1,590,483.00 as of August 29, 2005.

Before the court is the Plaintiffs' petition for reimbursement of attorney fees and costs pursuant to 42 U.S.C. § 1988. There is no dispute that the Plaintiffs are the prevailing party in this case. The purpose of an award of attorney fees and costs in a civil rights action is to compensate the Plaintiffs for fees and costs incurred and expended in the vindication of their civil rights.

At the outset, the court will consider reimbursement for prior administrative proceedings because the Plaintiffs were required to file a "right-to-sue letter" before proceeding with this action. More often than not, a discrete portion of the work product for the administrative proceedings is useful and necessary to advance the civil rights litigation and, as a result, will be a part of the award of attorney fees.

The determination of reasonable attorney fees and costs under Section 1988 is to be left to the sound discretion of the trial court. The intent of this section is to permit and encourage redress of civil rights violations of victims, not to create a civil rights fee bank to be liberally drawn upon by lawyers for their own welfare, and the fee award determination is to be based upon the totality of the case in light of the purpose of this section.

The parties are in agreement that the starting point for determining the amount of attorney fees is the lodestar. Estate of Borst v. O'Brien, 979 F.2d 511, 515 (7th Cir. 1992). The lodestar is calculated by multiplying the number of hours

2

reasonably expended on the litigation by the reasonable hourly rate. Id. The burden is on the party seeking the award to substantiate the hours worked and the rate claimed.

The Plaintiffs initially requested attorney fees based upon 1429 hours at $250.00 per hour in the amount of $357,250.00. Plaintiffs also seek to recover paralegal fees based upon a claim of 520.8 hours worked at $90.00 per hour in the amount of $46,872.00, making a total of $404,123.00, plus costs of $62,391.26. Plaintiffs further request that the lodestar be enhanced by a multiplier of 2.0 because of the complexity, the high risk, the difficulty in obtaining counsel, and the exceptional results, among other reasons.

The Defendants have responded by challenging the hourly rate claimed for attorney fees, paralegal fees, and costs. Defendants further contend that many of the hours claimed are excessive, redundant, unnecessary, and lack adequate documentation. They suggest that the lodestar fee should be reduced by 20%.

In Plaintiffs' reply brief, counsel states that his initial request for an hourly rate of $250.00 is understated. He asks the court to enhance his fee to $350.00 per hour. Counsel further urges the court to increase the hourly rate for the paralegal to $120.00 per hour. Defendants counter by moving to strike that portion of the reply which relates to the request for the increased hourly rates of both the attorney and the paralegal. The court has denied the motion to strike and will address the hourly rate issues elsewhere in this order.

3

\                    **HOURS REASONABLY EXPENDED**

            The Defendants challenge the hours spent by Plaintiffs' attorney and his
paralegal at each deposition.  Plaintiffs' attorney claims 180.6 hours for attending
depositions and his paralegal submitted a claim for 172.6 hours, which includes the
depositions of the Plaintiffs.  In the past, I have followed the rule that no more than one
lawyer should be compensated for appearing at a deposition of his or her witness.  Like
all rules, it has its exceptions.  It does not apply to depositions of the adverse party or
other major witnesses supportive of the adverse party's position.  Many experienced
trial lawyers have opined that the "deposition of a major witness may be the trial."  I am
well aware that counsel is more comfortable attending a deposition when the paralegal
is at his or her side.  However, when the deposition being taken is that of your own
clients, generally speaking there is little need for the attendance of a paralegal.  On the
other hand, because of the voluminous material involved in this case, I will allow
compensation for the paralegal's attendance at the deposition of the Defendants and
others identified with the defense.  Of the 48 depositions, the court has determined that
a total of 126.3 hours should be disallowed from the 172.6 hours claimed for paralegal
services in connection with the deposition.  In their objections, it appears that the
Defendants had trouble understanding the entries in Plaintiffs' billing such as "resumed
Hagen deposition."  The word "resumed" in this context means to summarize.

            Some of Defendants' examples of what it calls "over billing" is not
supported by the record.  It cites the Alexander deposition when the fee request lists
5.2 hours.  Defendant lists the starting time at 9:43 a.m. and ending at 12:08 p.m.,

Case 2:03-cv-00611-LA   Filed 02/03/06   Page 4 of 23   Document 266

whereas the transcript states that it started at 8:40 a.m. and concluded at 2:11 p.m.,
which would be approximately 5.5 hours. This includes a 45 minute lunch break from
11:45 a.m. to 12:30 p.m. Plaintiffs' counsel states in his reply brief that this lunch hour
was spent conversing with Lieutenant Alexander on what to expect for the remainder
of the deposition. The court has found more than one inaccuracy in Defendants'
response, which has cast a cloud upon the Defendants overall objections. Except as
herein stated, the court will not make any further adjustments in the time billed for
depositions by Plaintiffs' attorney because of the Defendants clear pattern of
discrepancy and in view of the explanations offered by Plaintiffs' counsel in their reply
brief.

    Defendants contend that "hours requested for work are also excessive."
Between November 3, 2003 and November 11, 2003, Plaintiffs' attorney claims to have
spent 26.7 hours in part preparing for the Jones deposition. The court finds that some
of the preparation time billed was particularly vague and considerably more than
required for a deposition that lasted 9.2 hours. Many of the activities during this period
combined such activities as telephone conference with opposing counsel, telephone
conferences with Plaintiffs, and other tasks performed and gives a single total for the
combined work. The record shows what time charges counsel customarily entered for
phone conferences and, by the process of elimination, the court concludes that
approximately 24.9 hours were allegedly devoted to preparation for the Jones'
deposition. Having observed the witness at trial, it would seem that two-and-a-half
eight hour days would be sufficient preparation for his deposition. The court will
therefore reduce the Plaintiffs' claims by 4.9 hours.

The court will also disallow some of the time charges relating to Plaintiffs' proposed expert Bashinski, who was subsequently withdrawn by Plaintiffs after Defendants moved to exclude his testimony. It does appear that he was not qualified as an expert in the economical area for which his opinion was to be offered. The Plaintiffs' fee request will, therefore, be reduced by 4.1 hours, which appears to be the time devoted to this individual after counsel knew or should have known that the witness was not qualified to express an opinion on the issues involved. I have not disallowed all of the time charges relating to Dr. Bashinski because, when one searches for an expert to support his position, he may not always be successful. However, that does not mean that time has not been expended in the furtherance of the Plaintiffs' cause. Excerpts from Dr. Bashinski's deposition were used in support of Plaintiffs' summary judgment motion which was filed on November 24, 2004.

The Defendants point out that the court should also eliminate the hours that are reported in error or for which work is clearly unrelated to this litigation. The Plaintiffs agree that .4 hours incurred on November 18, 2002, and 3.7 hours on July 1, 2004, should be deducted from the original submission. Therefore, the Plaintiffs' attorney's hours will be reduced to 2.6 hours and the paralegal's 1.5 hours.

Defendants urge the court to reduce the number of hours that the Plaintiffs claims were devoted to the motion for summary judgment. The affidavit of Plaintiffs' attorney shows a total of 94.9 hours devoted to the preparation and 42.7 hours for the reply. The summary judgment motions filed by both parties were very lengthy and fact intensive, raising a number of complex legal issues. Again, the fee request lacks specificity. Giving the Plaintiffs the benefit of the doubt, it seems to the

6

court that devoting the equivalent of over two weeks and two days to preparing this motion is excessive and not supported by the record. The court will allow 60 hours for this procedure and reduce the Plaintiffs' claim by 34.9 hours. It likewise appears that the 42.7 hours to prepare the reply is excessive and will be reduced to 30 hours, which reduces the Plaintiffs' claim for attorney fees by 12.7 hours.

The court recognizes that "research is the key to successful litigation" and in many respects the Plaintiffs were "breaking new ground." In such a case, the formula for success is to review the familiar to produce the new. Some writers have suggested that the only way to accurately determine whether the time spent was necessary is to request copies of counsel's memoranda on the subjects briefed. This court has spent untold hours in reading counsel's submissions and presiding over the trial. I feel that I am in a position to accurately evaluate the hours needed to address the issues.

With the exception of the modifications previously noted, I find that the total time spent by Plaintiffs' counsel in prosecuting this case was not excessive, given the complexity of the issues and the contentiousness of the parties. To the extent counsel performed seemingly duplicative or unnecessary tasks in other related areas of inquiry, theses were isolated instances in the course of a long and complex litigation, and the tasks that counsel undertook were not unreasonable under the circumstances.

## ATTORNEY FEES

The total award to the Plaintiffs amounted to $3,788,983.00. As stated above, the Plaintiffs petition for reimbursement of attorney fees and costs consisted of

7

attorney fees in the amount of $357,250.00, computed at a rate of $250.00 per hour; paralegal fees of $46,872.00, computed at $90.00 per hour; and costs of $62,391.26. The Plaintiffs requested that the lodestar for attorney fees be enhanced by a multiplier of 2.0. In his reply brief, Plaintiffs amended their request, seeking an award of attorney fees based upon a rate of $350.00 per hour and paralegal fees computed at $120.00 per hour. The affidavit submitted with the request indicated that attorneys practicing in the Civil Rights field, with the experience of Plaintiffs' attorney, charge fees ranging from $250.00 to $350.00 per hour. The Defendants countered by filing affidavits claiming that the prevailing rates for experienced civil rights attorneys varied from $175.00 to $200.00 per hour.

The court has found these affidavits to be of little value in resolving the issue at hand. If they are offered as experts in the field of Civil Rights litigation, they have failed to comply with Rule 26(a)(2). Affiants seem to opine on what they think civil rights lawyers should be paid. Not one of the affiants cited the court to cases reflecting such payments in this district. They have not attempted to compare the complexity of this case to other cases or, for that matter, cited the court to any comparable cases, or any cases of similar note where they, the affiants, charged their clients comparable fees.

In a moment of realism, Plaintiffs' counsel states, in his first affidavit (filed 9/9/05), that he charges "$200.00 per hour for various plaintiff litigation" and implies that he does not have a fixed hourly rate for representation of plaintiffs in Civil Rights litigation. From counsel's affidavit, it appears that he requires a retainer within the limited means of the Plaintiffs' ability to pay and agreed to represent the Plaintiffs on

8

a contingency basis for the balance of his attorney fees based on the expectation that he could collect the balance from the Defendants if the Plaintiffs prevailed. Counsel acknowledges that he was paid $59,500.00 in attorney fees and stated "I would not have gone back to the Plaintiffs and expected them to pay any portion of the fees incurred above the $59,500.00."

This forthright statement of counsel not only adds credence to his argument but a touch of realism to what is going on in the real world of attorney fees. In other words, although the going rate for Civil Rights litigation may be up to $350.00 per hour, because litigants cannot pay only a limited retainer, the additional fees are recovered only in those cases when the plaintiff prevails. Under our system, the payment must be scrutinized by a judge. Payments, in other words, are not as certain as it is for lawyers doing commercial or insurance defense litigation, who, at least for the most part, charge their clients on an hourly basis regardless of the outcome. Civil Rights attorneys should be compensated fairly for their services. Civil Rights attorneys, like all other lawyers, must exercise billing judgment in cases they win. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). The same applies to the hourly rate. Certain facts which go into a calculation of the lodestar amount are the time and labor required; the novelty and complexity of the issue; the skill and experience of counsel; the quality of representation and the results of the litigation. The courts have made it clear that these and other factors mentioned elsewhere in this opinion go into the initial calculation and are not used to enhance the

award beyond the lodestar figure.   See Id.; People Who Care v. Rockford Board of Education, 90 F.3d 1307, 1310 (7th Cir. 1996).

This was a trifurcated trial which started on March 7, 2005, and finally concluded on June 21, 2005.  A total of 72 witnesses were called to testify, as well as experts called by both sides to present evidence relating to the economic loss. Numerous motions and briefs were submitted and counsel presented oral argument on a number of issues.  There was extensive time and labor involved.

A reverse discrimination case is not only novel but very difficult to prove. There are few precedents in this circuit to guide counsel.

The skill required to perform the legal services properly would test the ability of the most skilled trial attorney.  Most plaintiff's counsel find it a challenge to deal with one client during a lengthy trial.  In this case, there were 17 Plaintiffs who felt discriminated against at different times and in different ways.  Each Plaintiff had different wage and pension benefits that were lost as a result of the action of the Defendants.  In addition, each Plaintiff was affected differently and the impact on their lives had to be presented separately.

Plaintiffs' counsel was a single practitioner.  He was, for the most part, precluded from accepting other employment during this retainer.  The billing records disclose that Plaintiffs' counsel worked almost exclusively on the case, at the expense of his present and potential clients.

Counsel for the Plaintiffs has been practicing in this district for 15 years, almost exclusively in the civil rights field.  This court had an extended opportunity to observe the manner in which he conducted himself and found him to be well prepared

10

and skilled in the way he presented Plaintiffs' case. The jury verdicts would tend to affirm the court's opinion.

There is little doubt that this was not your garden variety discrimination case. The Plaintiffs had great difficulty in retaining an attorney to represent them. They had no money to finance a case of this magnitude; no one in this district had prevailed on a reverse discrimination case; and the commitment of time and money would tax the resources of any firm. From a busy attorney's point of view, this was a truly undesirable case. It would be akin to attempting to coach Terrell Owens. It can be done but it would be hard to find a coach who would volunteer for the job.

After considering all of these factors and the law applicable to an award of attorney fees, the court has determined Plaintiffs' original request of $250.00 per hour is a reasonable fee for the hours reasonably expended in this case. Where the Plaintiffs have obtained excellent results, their attorney should recover a fully compensatory fee. This court had the privilege of presiding over this landmark case and, having observed Plaintiffs' counsel, I am satisfied that he has earned his fee. As an aside, it should be noted that when counsel agreed to the appointment of a special master, it was understood that the C.P.A. would be compensated at the rate of $225.00 per hour. It would be difficult to justify a fee of less than that for Plaintiffs' counsel.

The court echos the eloquent statement in the Congressional Record:

> If a citizen or any group of citizens are impotent to enforce their constitutional or statutory rights because of their inability to obtain legal counsel given what may seem to be a limited prospect of success or monetary relief, their day in court is denied them; and rights which they seek to assert and vindicate goes unvindicated and the entire

11

> nation, not just the individual citizen, suffers. (quoting 122
> Cong.Rec. 33313 (1976) (remarks of Sen. Tunney))

The submissions simply do not support an award of $350.00 per hour nor do they meet the standard required to enhance the lodestar.

## PARALEGAL RATES

Next is the issue of paralegal rates. Initially, Plaintiffs requested approval of a paralegal rate of $90.00 per hour. Subsequently, Plaintiffs requested that the court consider a fee "of $120.00 per hour as more reasonable". In support of this request, they submitted an affidavit of a past president of the Paralegal Association of Wisconsin who asserts that "firms charge paralegals connected in litigation cases at a rate of between $90.00 and $120.00 per hour." In evaluating the weight to be given affiant's declaration, it should be noted that he is presently employed as the Public Relations Coordinator for the Paralegal Association of Wisconsin–not exactly an impartial source. He states his opinion is based upon "my work experience as a paralegal," without identifying what that work experience consisted of, and how he learned of the hourly rates being charged in the Milwaukee area. There is no attempt to set forth the criteria used by affiant or even that he knows the qualifications of the paralegal in this case. As a parting shot, he asserts that $75.00 per hour for paralegal services would be considered the low end of what Milwaukee area law firms would charge for paralegal services "in areas not associated with litigation." From this, it would appear that affiant suggests that there are two rates for paralegal services in the Milwaukee area, one for litigation services, and another for other paralegal work. The

12

court will not undertake to make that distinction in this case or to define what activities would fall within the "litigation" category.

Once again, this court has found the affidavits and surveys to be of little value. There is no evidence of a well-defined billing rate or, for that matter, any rate previously billed to other civil rights clients. The Plaintiffs' counsel has not provided any specifics as to what he has charged his client for paralegal services in his civil rights cases. He cites one case in which a magistrate judge approved a $45.00 per hour fee in the year 2000 and another state court case in 2003, in which his paralegal assisted him but does not disclose what, if any, fee was approved for the paralegal.

Plaintiffs point out that Ms. Eastman, the paralegal, "earned a diploma from The Professional Paralegal Program" in 2003, and a diploma from the "The Professional Paralegal Specialty Program; Civil Litigation in the School of Paralegal Studies at the Professional Career Development Institute." The court has no way of knowing what this involved. Is this a mail order outfit that mails a diploma to an applicant for a fee or is it an institution that provides a course of study for an extended period of time which awards a diploma only if you successfully complete the course?

There is little or nothing in this record that provides the court with the paralegal's resume; what education she has; what experience, knowledge, skill, or training in the area of the law in civil rights litigation that she has acquired. What the court does have, however, is the first-hand opportunity to observe Ms. Eastman in the courtroom on the many occasions that she appeared with Plaintiffs' counsel. From those observations, I agree with Plaintiffs' counsel that her assistance to him in the presentation of the Plaintiffs' case, was invaluable. During the trial, when testimony

13

was being offered, she wrote notes to counsel which resulted in follow-up questions that were relevant and probative; during cross examination, when reference was made to a prior deposition, she was quick to come up with the page and line of the reference; when exhibits were needed, she had them at hand. These are just a few of the many incidents that caused the court to conclude that she was not just a spectator but a person who had a thorough knowledge of the case and understood what was necessary to develop the Plaintiffs' case in the light most favorable to her clients. The Defendants suggest that the medium market rate is $75.00 per hour and the Plaintiffs, who started with $90.00 and ended up with $120.00 per hour, claim that theirs is the rate for a paralegal in the Milwaukee area. The only inquiry for requested paralegal fees should be whether the work was so complex as to justify the efforts of a paralegal and did she perform such services. The answer is yes. Under all the circumstances, the court feels that an hourly rate of $80.00 per hour is a reasonable hourly rate for this paralegal.

## **TWENTY PERCENT REDUCTION**

The Defendants contend that, due to the expenditure of pretrial time on unsuccessful claims, the Plaintiffs' lodestar fee should be reduced by 20%. Once the lodestar amount is determined, the court is to consider the degree of success obtained in assessing whether there should be a reduction or enhancement of the lodestar amount. Indeed, in analyzing the fee request, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 435-36.

> In other cases the plaintiff's claims for relief will involve a
> common core of facts or will be based on related legal

14

theories. Much of counsel's time will be devoted generally
to the litigation as a whole, making it difficult to divide the
hours expended on a claim-by-claim basis. Such a lawsuit
cannot be viewed as a series of discrete claims. Instead,
the district court should focus on the significance of the
overall relief obtained by the plaintiff in relation to the hours
reasonably expended on the litigation.

The work complained of did relate to claims upon which Plaintiffs prevailed. They

involved a common core of facts and were based upon different, but related, legal

theories. It would be extremely difficult for this court to divide the hours expended on

a claim-by-claim basis, especially in view of the "block billing" used in the Plaintiffs'

billing procedure. To determine a percentage figure with any degree of specificity

would be equally difficult. The work was generally a package deal, not readily divisible

by claim. Instead, the court will follow the Hensley court suggestion and focus on the

significance of the overall relief obtained by Plaintiffs in relation to the hours reasonably

expended on this litigation and deny the Defendants' invitation to apply a percentage

reduction.

No one can or does argue that the relief obtained was not substantial. As

stated above, where a plaintiff has obtained excellent results, as in this case, their

attorney should recover a fully compensatory fee. This court has previously found that

there is insufficient basis for increasing the lodestar. On the other hand, in these

circumstances, the fee award should not be reduced simply because the Plaintiffs failed

to prevail on every contention raised in the lawsuit. Litigants, in good faith, may raise

alternative legal grounds for desired outcome, and the court's rejection of certain

grounds is not a sufficient reason for reducing a fee. The result is what matters.

15

This is the first time that, what has been termed a "reverse discrimination case," was tried in this district. To say that it was a hotly contested case would be an understatement. Yet, Plaintiffs' counsel persevered in the face of a most staunch legal defense.

## PROPORTIONALITY

As noted previously, the total award to the Plaintiffs amounted to $3,788,983.00. The Plaintiffs' original petition for reimbursement of attorney fees and paralegal fees amounted to $404,122.00, plus costs of $62,391.26. This circuit has repeatedly held that the district court should consider proportionality factors in exercising its discretion in fashioning a reasonable attorney fee. See Moriarty v. Svec., 233 F.3d 955, 967 (7th Cir. 1993), cert. denied, 532 U.S. 1066 (2001) and 533 U.S. 930 (2001); and Moriarty ex rel. Local Union No. 727 v. Svec., 429 F.3d 710, 717 (7th Cir. 2005). Taking into account the total damages awarded to Plaintiffs, the requested fees amount to less than 11% of the award. Thus, the Plaintiffs' petition comfortably passes the proportionality test.

## REIMBURSEMENT FOR VACATION, HOLIDAY AND COMPENSATORY TIME

Plaintiffs seek reimbursement for the value of vacation, holiday, and compensatory time they collectively used while attending their own trial.

One of the costs that litigants incur is the loss of individual income that they experience while preparing for and attending their trial. The Plaintiffs admit that they have been unable to cite the court to any statute or case law which would support such a claim. Plaintiffs argue that they "were forced to use this well-earned vacation,

16

holiday, and compensation time to attend the trial." While they may have impressed the jury with their deep and sincere resolve, it can hardly be said that they were "forced" to use this time to attend the trial. Like most litigants, this is a choice they made. Civil L.R. 54.2(c) provides that no party shall receive witness fees for testifying on his or her behalf. It follows that if a party may not be compensated for testifying, he or she will not be compensated for attendance.

The high cost of litigation has been the subject of numerous studies, articles, and essays in an effort to develop a procedure that would reduce the costs of litigation. If the court were to start authorizing payments to the successful litigant, we would be opening a new avenue of inquiry resulting in further hearings to determine who attended and when, their wages or salary, fringe benefits, and tax deductions. In this case there is nothing in the record of an evidentiary nature that would support any such award. This court is frankly appalled at the cupidity of these plaintiffs, especially in view of the jury verdict. The attempt to secure reimbursement for the value of their vacation, holiday, and compensatory time they collectively used, while attending their own trial, is denied.

## COSTS

Section 1988 has been construed to encompass the reimbursement of all reasonable out-of-pocket expenses incurred by the prevailing party. Henry Rebermeir, 738 F.2d 188, 192 (7th Cir. 1984). As pointed out in that case, the Act seeks to shift the cost of the winning party's lawyer to the losing party and the costs

17

include out-of-pocket expenses for which lawyers normally bill their paying clients separately. Here, Plaintiff claims $62,391.26 in costs. Defendants dispute $15,495.00 of those costs. Of this amount, the Defendants object to having to pay one half of the special master's fees of $10,847.00. Defendants noted that when the court ordered the appointment of the special master, it also ordered that the parties split the fee. Such interim orders were not intended to be dispositive of whether the prevailing party could recover its share under § 1988. The Plaintiffs are entitled to recover this element of its costs.

In addition, the Defendants object to the payment of $1375.00 in expert fees to Dr. Bashinski claiming that he "never qualified under Daubert." There was no Daubert hearing. The objection apparently relates to an entry on 2/27/09, "expert witness fee Howard Bashinski, $1,250.00" and a subsequent entry on 6/11/04, "Howard Bashinski expert witness fee $125.00." Presumably the latter was in payment for attending his deposition on May 20, 2004. The motion for a Daubert hearing regarding expert witness Bashinski was not filed until March 1, 2005, long after the initial fees were paid. Defendants also suggest that because Dr. Bashinski did not testify at trial, the Plaintiffs should not be reimbursed for the fees paid to him. The Civil Rights Act of 1991 amended § 1988 to allow recovery of expert fees. Due to the complex nature of this case, the court can understand why it was necessary for Plaintiffs' attorney to consult with outside experts, even if one of those experts did not testify but assisted Plaintiffs' attorney in preparing their ultimate work product. See Friedrich v. City of Chicago, 888 F.2d 511, 514 (7th Cir. 1989) (judgment vacated on other grounds, 499 U.S. 933 (1991)). Shortly thereafter, Congress amended § 1988 to allow for the

18

recovery of expert fees. Other circuits have adopted the Seventh Circuit logic, finding that "fee shifting provisions would not be well served by prohibiting reimbursement for the fees of non-testifying experts, at least to the extent that these experts tend to educate counsel in a technical matter germane to the suit." Interfaith Community Organization v. Honeywell International Inc., 426 F.3d 694, 717 (3rd Cir. 2005). It is clear that Plaintiffs' counsel relied upon Dr. Bashinski's computations regarding the disparity relating to the promotions and he is identified and quoted at some length in the Plaintiffs' summary judgment motion. The court will allow Plaintiffs to be reimbursed for Dr. Bashinski's fees in the amount of $1,375.00.

Next, we turn to Defendants' claim that the costs relating to on-line legal research should be disallowed because, under the attorney's fees charges, Plaintiffs' counsel did not charge for on-line research on the date claimed and no topic was identified. This circuit has previously held that computer research costs "are more akin to awards under attorney fee provisions than under costs." McIlveen v. Stone Container Corporation, 910 F.2d 1581, 1584 (7th Cir. 1990). Here, the Plaintiffs listed "on-line research" as a separate charge under the various phases of the case. "Computerized legal research involves an attorney sitting down in front of a computer and researching legal issues by searching through a data base which now includes almost every resource one would find in the country's large libraries. In addition to the attorney charging a client for the time he or she spends doing this research, the companies that offer the computerized legal research services also charge a fee. Theoretically, even though the client now pays two fees, there ultimate bill should be lower because the attorney should be able to do the research more quickly and

19

efficiently.  If this research had been done manually by an attorney sitting in a library, reading through books rather than sitting before a computer screen, nobody would dispute that the attendant fees would be properly classified as attorney fees and not costs."  Haroco, Inc. v. American National Bank and Trust Company of Chicago, 38 F.3d 1429, 1440 (7th Cir. 1994).

It appears that Plaintiffs have only sought to be compensated for the out-of-pocket expense of the computer fee and not the time the attorney spent on the computer.  Whether this was an oversight or not, it resulted in a benefit to the Defendants.  The computer fee is clearly to be recovered as attorney fees and not "costs."  The Defendants also object to the fact that no research topic was identified. The Plaintiffs have responded (Second Affidavit of Rettko filed 10/21/05) by identifying the computerized research undertaken on the dates listed.  The court will not disallow the charge for computerized legal research of $1500.94 and will add this sum to the award of attorney fees sought by Plaintiffs.

Defendants raise a number of additional objections to the remaining items of cost.  It is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application.  New York State Association of Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2nd Cir. 1983).  A review of these items does not disclose that these charges are excessive, redundant, or otherwise unnecessary and, therefore, will be allowed in the amount of $60,890.00.

Subsequent to the filing of the motion for reimbursement, the Defendants filed a motion to strike portions of Plaintiffs' reply brief.  Counsel for Plaintiffs promptly responded.  The motion was denied, and now Plaintiffs seek to recover an additional

20

2.5 hours, together with $60.00 for electronic research.  The court finds that the motion

to strike was precipitated, at least in part, by the Plaintiffs' reply brief and thus no

additional cost or attorney fees will be awarded.

## ADDITIONAL FEES AND COSTS

Plaintiffs seek reimbursement for fees incurred in responding to

Defendants' motion after verdict.  Plaintiffs claim to have incurred 23.8 attorney hours

from September 22, 2005 through September 26, 2005, and $370.00 in computerized

legal research.

Plaintiffs also seek to recover attorney fees for filing the 1988 motion in

the amount of 20 hours; plus an additional 24.4 hours in attorney fees to reply to

Defendants' response.  They also claim $670.00 for legal research and an additional

$132.00 for photocopies, parking, and postage.

In Hensley v. Eckerhart, 461 U.S. 424, 434 (1983), the Supreme Court

set forth the rule that "The applicant should exercise 'billing judgment' with respect to

hours worked, and should maintain billing time records in a manner that will enable a

reviewing court to identify distinct claims."   The then Chief Justice Burger, in a

concurring opinion, went even further:

> I read the court's opinion as requiring that when a lawyer
> seeks to have his adversary pay the fees of the prevailing
> party, the lawyer must provide detailed records of the time
> and services for which fees are sought.  It would be
> inconceivable that the prevailing party should not be
> required to establish at least as much to support a claim
> under 42 U.S.C. § 1988 as a lawyer would be required to
> show if his own client challenged the fees.  A district judge
> may not, in my view, authorize the payment of attorney fees
> unless the attorney involved has established by clear and

21

convincing evidence the time and effort claimed and shown that the time expended was necessary to achieve the results obtained.

Plaintiffs do not offer any detail for these additional charges. As a result, this court can only make a fair evaluation of the time expended, the nature and need for this service, and the reasonable fees to be allowed. The court has reviewed the Plaintiffs' submissions in response to the Defendants' motions after verdict and concludes that the 23.8 hours and the $370.00 expended on computerized legal research is reasonable under the circumstances and should be added to the attorney fees sought by the Plaintiffs.

In addition, the Plaintiffs seek to recover 20 hours for fees connected to the preparation of the 1988 motion. They also seek reimbursement for 24.4 hours to prepare a reply to Defendants' response. Had the original motion contained the necessary detail, the reply would have been minimal at best. Again, no detail is submitted from which this court can find that the time expended was necessary. The $670.00 for legal research is denied because the number of citations in the reply would not justify that expenditure. Finally, the costs are disallowed because, in the absence of any supporting data, there is no way this court could determine whether or not they were reasonably necessary.

## SUMMARY OF ATTORNEY'S FEES AND COSTS

Accordingly, the court ORDERS that the "Plaintiffs' Motion for Reimbursement of Attorney Fees and Costs Pursuant to 42 U.S.C. § 1988" (filed September 19, 2005) IS GRANTED as modified. The court awards Plaintiffs the

22

attorney fees, plus the computerized legal research fees, and less the deductions detailed above.  In the motion, the Plaintiffs request attorney fees based upon 1429 hours and the court has made certain adjustments which disallowed 59 hours and added 44 hours, leaving a total hours expended of 1414 hours at $250.00 per hour or $353,500.00.  To this is added the computerized legal research fees of $1,876.00.  The total attorney fees award is $355,371.00.  The paralegal fees of 520.8 hours have been reduced to 393 hours at $80.00 per hour or $31,440.00.  The costs have been adjusted to transfer $1501.00 out of the computerized legal research from Plaintiffs' charges to Plaintiffs' attorney fees, reducing the costs to $60,890.00.  This award covers both taxable and non-taxable costs.   The Plaintiffs motion is granted subject to the adjustments herein set forth.

Done and Ordered in Chambers at the United States Courthouse, Milwaukee, Wisconsin, this 3rd day of February, 2006.


s/ Thomas J. Curran
Thomas J. Curran
United States District Judge